ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL V

| *IN RE:*<br>PRÁCTICA DE ESTIMACIONES DE CONSUMO Y POSTERIORES CORRECCIONES DE FACTURA EN CUENTAS COMERCIALES EMPLEADAS POR LUMA | **KLRA202500204** | *REVISIÓN ADMINISTRATIVA* procedente del Negociado de Energía de Puerto Rico<br><br>Caso Núm.: NEPR-IN-2023-0003<br><br>Sobre: Reglamento de Procedimientos Adjudicativos, Avisos de Incumplimiento, Revisión de Tarifas e Investigaciones, del 18 de diciembre de 2014, Número 8543 ("Reglamento 8543") del NEPR de Puerto Rico |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

Bonilla Ortiz, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 24 de junio de 2025.

Comparece ante este foro LUMA Energy, LLC y LUMA Energy ServCo, LLC (LUMA o "parte recurrente") y nos solicita que revisemos el *Informe Final y Orden* emitido por el Negociado de Energía de Puerto Rico de la Junta Reglamentadora del Servicio Público (Negociado o "parte recurrida"), notificado el 27 de enero de 2025. Mediante el referido dictamen, el Negociado acogió las conclusiones y recomendaciones del Oficial Examinador, por lo que, indicó que LUMA debía establecer guías o reglamentaciones en torno a los procedimientos, derecho y deberes de los consumidores.

Por los fundamentos, que expondremos a continuación **DESESTIMAMOS** el recurso de epígrafe por falta de jurisdicción.

**I.**

El 24 de mayo de 2023, la Oficina Independiente de Protección al Consumidor (OIPC) presentó un *Escrito en Solicitud Urgente de Investigación* ante el Negociado.[1] En este, solicitó se realizara una investigación sobre las prácticas de estimaciones de consumo de energía y posteriores correcciones de facturas empleadas por LUMA en cuentas comerciales. Alegó que, varios consumidores a nivel comercial recibieron facturas de LUMA cobrándoles cuantías considerables.

El 18 de julio de 2023, el Negociado emitió una *Resolución y Orden*,[2] mediante la cual determinó que estaría iniciando la investigación solicitada por la OIPC, siendo asignada al Lcdo. Gerardo A. Flores. Asimismo, le ordenó a LUMA a que presentara su posición sobre las alegaciones presentadas en su contra. Finalmente, indicó que de LUMA incumplir con lo ordenado podría resultar en la imposición de multas y/o cualquier otra acción administrativa.

En cumplimiento con la Orden, el 7 de agosto de 2023, LUMA presentó su contestación a la solicitud de investigación.[3] En esencia, esbozó que el mecanismo adecuado para evaluar los reclamos sobre facturas era precisamente a través de procedimientos de revisiones de facturas presentadas por los consumidores afectados. Añadió que, el remedio solicitado por la OIPC era improcedente en derecho en un proceso investigativo, puesto que, el Reglamento Núm. 8543 no le concedía

---

[1] *Escrito en Solicitud Urgente de Investigación*, págs. 1-7 del apéndice del recurso.
[2] *Resolución y Orden*, págs. 8-10 del apéndice del recurso.
[3] *Moción en Cumplimiento con Resolución y Orden del 18 de julio de 2023 y Contestación a Solicitud de Investigación,* págs. 11-27 del apéndice del recurso.

autoridad al Negociado para remedio legales o en equidad en un proceso de investigación. Sostuvo que, solo permitía que emitieran un informe final con los hallazgos. Por consiguiente, solicitó el cierre de la investigación y que fueran denegados los remedios solicitados.

El 29 de diciembre de 2023, el Negociado emitió una *Orden*, en la cual le solicitó a la OIPC a que replicara al escrito de LUMA, y le ordenó a la parte recurrente a que sometiera varios documentos.[4]

El 1 de febrero de 2024, la OIPC presentó su *Moción en Cumplimiento de Orden*.[5] De entrada, alegó que no estaban obligados a ofrecer información específica ni detallada como condición para solicitarle al Negociado que investigue una practica empleada por LUMA en perjuicio de los consumidores. En segundo lugar, indicó que el caso no trataba sobre una querella, sino una solicitud de investigación, por lo que, no se requería agotar remedios administrativos previo a su radicación. Entiéndase, que no tenían que acreditar que los clientes afectados cumplían con los requisitos legales y reglamentarios aplicables. Finalmente, planteó que el Negociado podía utilizar su facultad remedial y adjudicativa para realizar una determinación amparada en los principios elementales de equidad.

Por su parte, LUMA presentó su respuesta al requerimiento de información.[6] Reiteró que, el mecanismo apropiado para evaluar los reclamos sobre la corrección

---

[4] *Orden*, págs. 31-32 del apéndice del recurso.
[5] *Moción en Cumplimiento de Orden*, págs. 33-45 del apéndice del recurso.
[6] *Moción en Cumplimiento de Orden del 2 de enero de 2024 sometiendo Respuestas a Requerimiento de Información*, págs. 46-57 del apéndice del recurso.

de una factura de energía eléctrica era mediante el proceso de revisión de factura que debían presentar los consumidores afectados. Asimismo, acompañó la moción con varios anejos los cuales sometió bajo sello de confidencialidad. Indicó que, conforme dispone el Reglamento Núm. 8543, el expediente de una investigación será confidencial mientras la investigación estuviera en proceso.

El 8 de febrero de 2024, la OIPC presento una *Moción en Solicitud de Orden*.[7] Alegó que, el documento confidencial que presentó LUMA, atenta contra las facultades que le fueron conferidas en la defensa de os intereses de los consumidores del servicio eléctrico. Añadió que, la confidencialidad del expediente durante el proceso investigativo va dirigida al público en general y no a las partes envueltas. Por ello, solicitó que dicho documento les fuera notificado.

El 21 de febrero de 2024, LUMA presentó una *Respuesta a Moción en Cumplimiento de Orden presentada por la OPIC el 1 de febrero de 2024*.[8] En esencia, arguyó que estaban en desventaja procesal y sustantiva, puesto que las alegaciones esbozadas por OIPC eran generales y no los colocaban en una posición para atenderlas. Por lo que, estaban impedidos para poder colaborar en el proceso. Alegó que, al no conocer cuáles eran los clientes comerciales afectados por las facturas, los limitaba a que pudieran proveer información para la resolución de la investigación. Así pues, solicitó el cierre o desestimación de la investigación.

---

[7] *Moción en Solicitud de Orden*, págs. 58-63 del apéndice del recurso.
[8] *Respuesta a Moción en Cumplimiento de Orden presentada por la OPIC el 1 de febrero de 2024*, págs. 71-82 del apéndice del recurso.

El 22 de febrero de 2024, el Oficial Examinador emitió una *Resolución y Orden*, mediante la cual indicó que por tratarse de un proceso adjudicativo[9] y que la información solicitada es para fines de deliberación del Oficial Investigador, declaró *Ha Lugar* la solicitud de confidencialidad presentado por LUMA.[10]  No obstante, ordenó a LUMA a que le proveyera acceso del documento a la OIPC.  A su vez, que debía presentar un borrador del *Acuerdo de No Divulgación* para su aprobación.

Posteriormente, el 18 de marzo de 2024, la OIPC presentó su *Réplica a Respuesta a Moción en Cumplimiento de Orden presentada por la OIPC el 1 de febrero de 2024*.[11] En esta, señaló que la solicitud de investigación iba dirigida a que el Negociado le requiriera a LUMA la información puntual y necesaria, para evaluar la práctica de estimaciones de facturas a los consumidores del sector comercial.  Planteó que, aun cuando LUMA tiene una acción de recobro por disposición legal previo a la enmienda a la Ley Núm. 83, no puede justificar la falta de diligencia ni prácticas que incidan negativamente en la viabilidad de los negocios.

El 28 de agosto de 2024, el Negociado emitió una *Orden*, mediante la cual informó que el Oficial Investigador presentaría sus hallazgos y recomendaciones del curso de acción a seguir en la investigación.[12]

---

[9] Aun cuando en esta sola instancia, el Oficial Examinador denominó el proceso como adjudicativo, lo cierto es que el "nombre no hace cosa", puesto que, luego de una evaluación sobre las resoluciones emitidas por el Negociado, éste concluyó que el *Informe Final* no era un procedimiento adjudicativo sino investigativo.  Asimismo, más adelante, se verá que el dictamen recurrido no conlleva una orden hacia LUMA.
[10] *Resolución y Orden*, pág. 83 del apéndice del recurso.
[11] *Réplica a Respuesta a Moción en Cumplimiento de Orden presentada por la OIPC el 1 de febrero de 2024*, págs. 101-116 del apéndice del recurso.
[12] *Orden*, pág. 127 del apéndice del recurso.

Así las cosas, el 27 de enero de 2025, el Negociado emitió su *Informe Final y Orden*.[13] Mediante el cual, determinó, en primer lugar, que el Negociado *puede motu proprio* iniciar cualquier investigación sobre prácticas de reconciliación de facturas emitidas a clientes comerciales u otros temas dentro de su jurisdicción. Así pues, indicó que una vez inició el proceso de investigación hallaron lo siguiente:

1. LUMA **debe** profundizar la actualización de sus procesos y contadores para reducir el numero de facturas comerciales estimadas.

2. LUMA **debe** comunicar mas efectivamente la entrada en vigor de la Ley 36-2024.

3. LUMA **debe** adoptar guías o reglamentación. (Énfasis nuestro).

Por consiguiente, ordenó a LUMA a que implementara inmediatamente los hallazgos contenidos en el *Informe de Investigación*. Advirtió a las partes, sobre su derecho a presentar por escrito cualquier objeción o comentarios dentro de veinte (20) días desde la fecha de notificación. Asimismo, indicó que el expediente del caso sería confidencial hasta que concluyera la investigación.

En desacuerdo, el 18 de febrero de 2025, LUMA presentó sus *Objeciones al Informe Final y Orden del 27 de enero de 2025 y Solicitud de Reconsideración*.[14] En síntesis, alegó que el *Informe Final* del Negociado excedió los parámetros de investigación, puesto que, no los puso sobre aviso al ordenar la adopción de reglamentos o revisión de procesos. Esbozó que, una vez finalizada la investigación, el Negociado debió emitir

---

[13] *Informe Final y Orden*, págs. 129-141 del apéndice el recurso.
[14] *Objeciones al Informe Final y Orden del 27 de enero de 2025 y Solicitud de Reconsideración*, págs. 142-159 del apéndice del recurso.

un *Aviso de Incumplimiento* o referir el asunto para la presentación de una *Querella*, lo cual no sucedió. Asimismo, añadió que la directriz emitida por el Negociado para que promulgaran un reglamento o guía, era vaga e imprecisa, al carecer de criterios objetivos conducentes a su implementación inmediata. Así pues, solicitó la reconsideración y que se dejara sin efecto lo ordenado.

El 14 de marzo de 2025, el Negociado emitió una *Resolución*, en la cual determinó mantener las conclusiones y recomendaciones presentadas en el *Informe de Investigación*, las cuales acogió en su *Informe Final y Orden*.[15]

El 21 de marzo de 2025, LUMA presentó una *Solicitud para que se Re-Emita el Informe Final y Orden del 27 de enero de 2025*.[16] Arguyó que, el Negociado había omitido incluir las advertencias estatutarias que requiere la Ley Núm. 38-2017, para que pudieran solicitar remedios en alzada. Sostuvo que, carecían de certeza procesal sobre la fecha en que el *Informe Final y Orden* pudiera considerarse una determinación final sujeta a revisión judicial.

El 3 de abril de 2025, el Negociado emitió una *Resolución*, en la cual concluyó que el *Informe Final* de la investigación, no era un procedimiento adjudicativo.[17] Por lo que, resultaba inaplicable la disposición contenida en la Ley Núm. 38-2017. Añadió que, de iniciar un proceso adjudicativo sobre el resultado de la

---

[15] *Resolución*, pág. 161 del apéndice del recurso.
[16] *Solicitud para que se Re-Emita el Informe Final y Orden del 27 de enero de 2025I,* págs. 162-170 del apéndice del recurso.
[17] *Resolución,* pág. 172 del apéndice del recurso.

investigación, le emitirían las advertencias y derechos aplicables.

Inconforme, el 4 de abril de 2025, LUMA presentó el recurso de epígrafe y planteó la comisión de los siguientes errores:

> Erró y abuso de su discreción el NEPR al adjudicar controversias e imponer obligaciones en un Informe Final de un proceso investigativo. El NEPR violentó las garantías básicas del debido proceso de ley, actuó en contravención a sus propias reglas sobre procesos investigativos, y emitió determinaciones que no están apoyadas en el récord administrativo.

> El Informe Final no cumple con las exigencias de la LPAU para imprimirle finalidad a un dictamen administrativo puesto que no incluyó los apercibimientos del derecho a solicitar reconsideración y revisión judicial, ni los términos aplicables.

> Erró y abusó de su discreción el NEPR al emitir directrices vagas e imprecisas en el Informe Final de la investigación.

Luego de varias mociones presentadas, el 20 de mayo de 2025, el Negociado presentó una *Moción de Desestimación*. En esencia, alega que carecemos de jurisdicción, puesto que, la determinación recurrida consiste de un informe final de una investigación y no de una orden o resolución final de un proceso adjudicativo revisable.

Por su parte, el 10 de junio de 2025, LUMA presentó su oposición a la desestimación. Alega que, el *Informe Final* dispuso de la totalidad de los asuntos investigados, además que adjudicó derechos e impuso obligaciones.

Contando con el beneficio de la comparecencia de todas las partes, procedemos a resolver.

**II.**

**-A-**

El Artículo 4.002 de la Ley Núm. 201 de 22 de agosto de 2003, *Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003*, 4 LPRA sec. 24 *et seq*. (Ley Núm. 201-2003), establece que el Tribunal de Apelaciones tendrá jurisdicción para revisar "como cuestión de derecho […] las decisiones finales de los organismos y agencias administrativas." 4 LPRA sec. 24u. De igual forma, el Artículo 4.006 de la precitada Ley provee para la revisión judicial "de las decisiones, órdenes y resoluciones finales de organismos o agencias administrativas." 4 LPRA sec. 24y.

De otra parte, la Sección 4.5 de la Ley Núm. 38 de 30 de junio de 2017, *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, 3 LPRA sec. 9675, (LPAU), versa sobre el alcance de la revisión judicial, dispone que este tribunal intermedio sostendrá las determinaciones de hechos de las decisiones de las agencias, si se basan en evidencia sustancial que obra en el expediente administrativo; revisará en todos sus aspectos las conclusiones de derecho; y podrá conceder al recurrente el remedio apropiado si determina que a éste le asiste el derecho. Mediante la revisión judicial, debemos evaluar que la decisión administrativa encuentre apoyo en la evidencia sustancial que obre en la totalidad del expediente administrativo. El concepto *evidencia sustancial* se ha definido como "aquella prueba relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión." *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 36 (2018), *Hilton Hotels v. Junta Salario Mínimo*, 74 DPR 670, 686 (1953).

El expediente administrativo, por su parte, constituye la base exclusiva para la decisión de la agencia en un procedimiento adjudicativo, así como para la revisión judicial ulterior. Sec. 3.18 de la LPAU, 3 LPRA sec. 9658; *Graciani Rodríguez v. Garaje Isla Verde*, supra, pág. 128. A su vez, examinamos que el ente gubernamental haya realizado una aplicación o interpretación correcta de las leyes o reglamentos que se le ha encomendado administrar. Finalmente, auscultamos que el organismo haya actuado dentro de los parámetros de su ley habilitadora, no de forma arbitraria, irrazonable ni haya lesionado derechos constitucionales fundamentales. *Torres Rivera v. Policía de PR,* 196 DPR 606, 628 (2016).

Por consiguiente, al momento de justipreciar la valoración y razonabilidad de las decisiones administrativas adoptadas por las agencias del poder ejecutivo, los tribunales tenemos la obligación de ejercer un juicio independiente de las disposiciones legales para determinar si una agencia ha actuado o no dentro de los límites de su autoridad estatutaria, incluso en los casos de ambigüedad legislativa. Véase, *Loper Bright Enterprises v. Raimondo*, 603 US 369 (2024).[18] No obstante, según ha establecido el Tribunal Supremo Federal, las interpretaciones y los dictámenes administrativos —realizados por virtud del cumplimiento de un deber oficial y basados en su experiencia especializada— pueden constituir un cuerpo de

---

[18] En *Loper Bright Enterprises v. Raimondo*, *supra*, resuelto el 28 de junio de 2024, el Tribunal Supremo Federal revocó la doctrina de deferencia establecida en el caso *Chevron USA, Inc. v. Natural Resources Defense Council*, 467 US 837 (1984). Con ello, además, se propende al fortalecimiento de la separación de poderes. Véase, *Loper Bright Enterprises v. Raimondo*, *supra*, pág. 2274 (Op. Conc. Juez Thomas).

experiencia y un juicio informado al que los foros revisores y los litigantes pudiéramos recurrir en cuestiones jurídicas. *Íd.*, pág. 2259. Así pues, surge el axioma de la doctrina de revisión judicial, en que los tribunales apelativos estamos llamados a otorgar amplia deferencia a las decisiones de las agencias administrativas. Ello, en atención a la experiencia y pericia que se presume tienen esos organismos para atender y resolver los asuntos que le han sido delegados. *Graciani Rodríguez v. Garaje Isla Verde*, supra, pág. 126.

Ahora, el peso persuasivo de la determinación administrativa va a depender de la minuciosidad en su consideración, de la validez de su razonamiento, así como de su congruencia con pronunciamientos anteriores y posteriores. Véase, *Skidmore v. Swift & Co.*, 323 US 134, 139-140 (1944), citado a *Loper Bright Enterprises v. Raimondo*, supra, pág. 2259.

Sobre la notificación adecuada de las determinaciones administrativas finales, la Sección 3.14 de LPAU, 3 LPRA sec. 9654, establece que estas deben ser notificadas a las partes en el proceso administrativo. Especifica que la notificación debe advertir el derecho de las partes a solicitar reconsideración ante la agencia o instar un recurso de revisión judicial ante el Tribunal de Apelaciones, con expresión de los términos jurisdiccionales que tienen las partes para ejercer dicho derecho. La precitada sección destaca, además, que los referidos términos no comenzarán a transcurrir hasta que la agencia administrativa haya cumplido con estos requisitos. *Comisión Ciudadanos v. G.P. Real Property,* 173 DPR 998, 1014 (2008).

Nuestro Tribunal Supremo ha reiterado que, por imperativo del derecho a un debido proceso de ley, la notificación adecuada de una determinación administrativa garantiza el derecho de las partes a cuestionar dicha determinación en el foro judicial. Ello es así porque los remedios posteriores al dictamen de las agencias forman parte del debido proceso de ley y la falta de notificación adecuada puede impedir que se procuren tales remedios, socavando dicha garantía constitucional.

Conforme a lo anterior, se ha aclarado que no se pueden oponer los términos jurisdiccionales para recurrir de una determinación administrativa a una parte que no ha sido notificada de dicha determinación, conforme a derecho. *Comisión Ciudadanos v. G.P. Real Property*, 173 DPR 998, 1014 (2008); *Colón Torres v. Autoridad de Acueductos y Alcantarillados*, 143 DPR 119 (1997). Así, una notificación defectuosa priva de jurisdicción al foro revisor para entender sobre el asunto impugnado.

Sobre este particular, el Tribunal Supremo de Puerto Rico considera que las deficiencias en el contenido de la notificación de una adjudicación final administrativa privan a este foro revisor de su jurisdicción, "pues el plazo para revisión judicial no ha comenzado a transcurrir." *PR Eco Park, et al. v. Mun. de Yauco,* 202 DPR 525, 538 (2019).

### III.

Como Foro Apelativo, en primer lugar, estamos obligados a examinar si tenemos jurisdicción para atender el recurso presentado.

En el caso de autos, LUMA nos solicita que revisemos el *Informe Final y Orden* emitido por el Negociado el 27 de enero de 2025. En esencia, alega que la parte recurrida adjudicó deberes e impuso obligaciones de un proceso investigativo, violentando las garantías básicas del debido proceso de ley. Asimismo, esboza que dicho Informe Final no cumplió con las exigencias de la LPAU al no incluir los apercibimientos para solicitar reconsideración y revisión judicial.

Por su parte, el Negociado solicita la desestimación del recurso, ya que la determinación recurrida consiste en un *Informe Final* de una investigación y no sobre una orden o resolución revisable. Señala que, el *Informe* no resolvió una controversia como parte de un proceso adjudicativo, no impuso penalidades, ni afectó derechos adquiridos. A su vez, que tampoco obligó a LUMA a realizar alguna acción bajo amenaza de sanción, multa u otro remedio. Alega que, dicho *Informe* fue producto de una facultad investigativa, cuyo desenlace fue identificar oportunidades de mejorar la operación de una parte específica del sistema de facturación de LUMA. Por ello, solicitó la desestimación del recurso, al carecer de jurisdicción.

Por su parte, LUMA alega que no procede la desestimación, debido a que, el *Informe Final* dispuso de la totalidad de los asuntos investigados, además de que tuvo efectos adjudicativos y dispositivos. Sostiene que, el Negociado le impuso la obligación de aprobar guías o reglamentos, lo cual, el Reglamento Núm. 8543 no contempla que estos emitan recomendaciones de carácter mandatorio.

Luego de examinar la *Solicitud de Revisión de Decisión Administrativa*, a la luz de la totalidad del expediente, resolvemos que procede la desestimación del recurso de epígrafe, por falta de jurisdicción. Ello, pues el dictamen recurrido no es una acción adjudicativa que constituya una orden o resolución final, por lo que no es susceptible de revisión judicial por parte de este foro.

La propia parte recurrente, alega que la OIPC solicitó se iniciara un proceso investigativo sobre la práctica de LUMA al estimar el consumo de energía en cuentas comerciales y emitir facturas por concepto de correcciones realizadas en esas cuentas como resultado de estimaciones por periodos de tiempo prolongados. No obstante, durante el periodo de investigación fue enmendada la Ley Núm. 83-1941, y a pesar de ello, el reclamo iba dirigido a asegurar que no fuera aplicado el límite temporal sobre la capacidad de la AEE y LUMA para corregir los errores en las facturas, y así notificar a los abonados en un término razonable.

Así pues, el Negociado en base a la información recopilada y provista por LUMA consignó los hallazgos en cuanto al procedimiento, cantidad de clientes y planes que contemplan para atender la situación de los clientes comerciales. Por lo que, el *Informe* incluyó recomendaciones que contribuirían a mejorar los procedimientos, derechos y deberes de los consumidores y de LUMA. Es importante destacar que el Negociado indicó en sus recomendaciones que se trataba de acciones que Luma "debe" de implementar. Finalmente, no determinó que la parte recurrente haya violado alguna ley o reglamento. Tampoco advirtió que Luma sería

penalizado de no cumplir con las recomendaciones que debía implantar.

De otra parte, nos llama la atención el hecho de que el *Informe* no incluyera alguna advertencia que de LUMA incumplir con el Informe podría resultar en la imposición de multas y/o cualquier otra acción administrativa. Tampoco incluía alguna advertencia dirigida a apercibir al recurrente respecto a la disponibilidad de términos para solicitar reconsideración ante la agencia o, posteriormente, acudir ante este foro revisor mediante la presentación de un recurso de revisión judicial. Todo lo contrario, el Negociado en varias ocasiones durante el proceso aclaró que estaba en un procedimiento investigativo y no en uno de acción adjudicativa. Lo anterior no es más que otro elemento que nos permite concluir que el Negociado obró consciente de que, al emitir el dictamen recurrido, se trataba de una determinación investigativa y no de una decisión adjudicativa final que fuese susceptible de revisión.

Así las cosas, y en consideración al hecho de que no nos encontramos ante un dictamen administrativo final, carecemos de jurisdicción para revisarlo en los méritos.

**IV.**

Por los fundamentos antes expuestos, **DESESTIMAMOS** el recurso de revisión por carecer de jurisdicción.

Lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones